USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8/8/05

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

PHILIP BARNET, RICKIE D. FRAZIER and
ZELMA T. FRAZIER, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

    -against-

ELAN CORP., PLC., KELLY MARTIN, LARS
ECKMAN and SHANE COOK,

                Defendants.

------------------------------------------------------------x
------------------------------------------------------------x

GLENN G. MALLOFF, THE IRVING SHACK
TRUST, and PATRICIA MARCONI MALLOFF,
on behalf of themselves and all others similarly
situated,

                Plaintiffs,

    -against-

ELAN CORP., PLC., KELLY MARTIN, LARS
ECKMAN and SHANE COOK,

                Defendants.

------------------------------------------------------------x

05 Civ. 2860 (RJH)

05 Civ. 3166 (RJH)

**MEMORANDUM**
**OPINION AND ORDER**

Presently before the Court are two securities fraud actions (the "SDNY Actions") brought against certain officers and directors of Elan Corporation, plc. ("Elan") and Elan itself (collectively, the "Defendants"). In each case, as well as in substantially similar cases pending in other districts, plaintiffs seek certification of a class of investors allegedly injured by a series of materially misleading press statements issued by Elan between February 18, 2004 and February 25 or 28, 2005 (the "Class Period"). The first-filed of these related actions was brought on March 4, 2005 in the District of Massachusetts under the caption *Williams v. Elan Corp., plc*, No. 05-CV-10413 (JLT) (the "Massachusetts Action"). On March 3, 2005, counsel in the Massachusetts Action caused a notice to be published in *PrimeZone Media Network* advising purchasers of Elan securities that (1) a class action against defendants had commenced in the District of Massachusetts; (2) the class included all plaintiffs who had purchased Elan securities between February 18, 2004 and February 25, 2005; (3) the complaint asserted claims charging defendants with, *inter alia*, artificially inflating its stock price during the class period by allegedly misrepresenting material information concerning a new drug called Tysabri; and (4) any class member wishing to serve as lead plaintiff and choose lead counsel was required to move the court within sixty days. The SDNY Actions were filed shortly thereafter.

On May 3, 2005, this Court received three motions for consolidation and appointment of lead plaintiff and lead counsel in the SDNY Actions: (1) the Institutional Investor Group asked that it be appointed lead plaintiff and that Milberg Weiss and Entwistle & Cappucci LLP be appointed co-lead counsel; (2) the Conus Fund, LP, The Conus Fund (QP), LP, The Conus Fund Offshore, Ltd., East Hudson Inc. (BVI), Steven & Julie Suran, and Gerald E. & Diane M. Harmon (collectively, the "Conus Fund Group") filed a similar motion and requested that Stull,

Stull & Brody be appointed as lead counsel; and (3) Kyle Newcomer filed a motion asking that he be appointed lead plaintiff, and that his counsel, Schatz & Nobel, P.C., be appointed lead counsel. These three motions are now before the Court. For the reasons set forth below, the Court hereby consolidates the SDNY Actions, appoints MN Services, Activest Investmentgesellschaft mbH, Electronic Trading Group L.L.C., Third Millennium Trading, LLP, Horatio Capital LLC, and Donald S. Frank (collectively, the "Institutional Investment Group") as lead plaintiff, and designates the firms of Milberg Weiss Bershad & Schulman LLP ("Milberg Weiss") and Entwistle & Cappucci LLP to serve as co-lead counsel. The Court also orders the parties to show cause why this consolidated action should not be transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

## DISCUSSION

### I. Consolidation of the Actions

Rule 42(a) provides that a court may order all actions consolidated if they involve "common issues of law or fact." Fed. R. Civ. P. 42(a). In determining the propriety of consolidation, district courts have "broad discretion", and generally favor the view that "considerations of judicial economy favor consolidation." *Ferrari v. Impath, Inc.*, 2004 WL 1637053, at *2 (S.D.N.Y. July 20, 2004) (citations and quotations omitted). Indeed, several courts have noted that consolidation is particularly appropriate in the context of securities class actions if the complaints are "based on the same 'public statements and reports'" and defendants will not be prejudiced. *Id.*, 2004 WL 1637053, at *2 (quoting *Mitchell v. Complete Mgmt., Inc.*, 1999 WL 728678, at *1 (Sept. 17, 1999)).

Each of the SDNY Actions implicates similar or overlapping claims under Sections

3

10(b), rule 10b-5 promulgated thereunder, and 20(a) of the Securities and Exchange Act of 1934 (the "1934 Act"). Indeed, each complaint rest on the same fundamental assertion: that defendants made material misrepresentations regarding the results of clinical trials and the commercial potential of a drug known as "Tysabri". Each complaint also alleges that these misstatements were ultimately revealed and corrected when Elan issued a press release on February 28, 2005. *See In re Olsten Corp. Securities Litigation*, 3 F. Supp. 2d 286, 292-93 (E.D.N.Y. 1998) (consolidating cases despite slight differences in claims and alleged class periods). On this basis, the Court finds that the SDNY Actions involve "common issues of law and fact", and hereby consolidates them for all purposes.

The caption of these consolidated actions shall hereinafter be referred to as "*In re Elan Corp. Securities Litigation*". All relevant documents and submissions shall be maintained as one file under Master File No. 05 Civ. 2860 (RJH). Any other actions now pending or later filed in this district that arise out of or are related to the same facts as alleged in the above cases shall be consolidated for all purposes, if and when they are brought to this Court's attention, whether by application to the Court or otherwise.

## II. Appointment of Lead Plaintiff

### A. *The Notice and Filing Requirements Under the PSLRA*

As noted above, the Institutional Investor Group, the Conus Fund Group, and Kyle Newcomer have each moved to be appointed as lead plaintiff. The Private Securities Litigation Reform Act of 1995, Pub.L. 104-67, 109 Stat. 737 (1995), governs the procedure for appointing a lead plaintiff where, as here, claims are brought under the Securities and Exchange Act of 1934.

As an initial matter, the PSLRA requires the plaintiff in the first-filed action to cause a notice to be published in a national, business-oriented publication within 20 days of filing the complaint. 15 U.S.C. §78u-4(a)(3)(A)(i). The notice must inform members of the purported class of (1) the details and pendancy of the action; and (2) their right to seek appointment as lead plaintiff within 60 days after the date on which notice is published. *Id.* Within 90 days after the publication of such notice, a court shall consider any motion made by any class member, regardless of whether they are individually named as plaintiffs in any of the actions, and shall appoint the "most adequate plaintiff" as lead plaintiff. 15 U.S.C. §78u-4(a)(3)(B)(i). The PSLRA instructs courts to appoint lead plaintiff in a timely fashion after the consolidation decision has been rendered. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii); *The Constance Sczesny Trust v. KPMG LLP, et al.*, 223 F.R.D. 319, 322 (S.D.N.Y. 2004).

In this case, notice was published on March 3, 2004 in *PrimeZone Media Network. See* 15 U.S.C. §78u-4(a)(3)(A)(ii) (where multiple related actions are brought, notice shall be published only once). That notice set forth the pendancy of the action, the claims asserted therein, the purported class action period and the right of any class member to seek appointment as lead plaintiff. Accordingly, the notice satisfied the requirements of the PSLRA, and therefore triggered the sixty-day period in which class members could move to be appointed as lead plaintiff. The Investor Group, the Conus Fund Group, and Kyle Newcomer filed timely applications. The only question, then, is which among the three is the "most adequate" lead plaintiff under the terms of the PSLRA.

5

### B. The Most Adequate Plaintiff

In 1995, Congress enacted the PSLRA to address perceived abuses in securities fraud class actions created by lawyer-driven litigation. *Ferrari*, 2004 WL 1637053, at *3; *see* H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ("H.R. Conf. Rep. No. 104-369"). Consistent with this goal, the PSLRA was designed to encourage "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders" to participate in the litigation and exercise control over the selection and actions of counsel. *Ferrari*, 2004 WL 1637053, at *3 (internal citations and quotations omitted). In other words, by enacting the PSLRA, Congress sought to encourage class members with the largest purported losses to act as lead plaintiffs in private securities litigation. *See* H.R. Conf. Rep. No. 104-369.

Not surprisingly, then, the PSLRA provides that the presumptively most adequate lead plaintiff is "the person or group of persons" that has "the largest financial interest" in the relief sought by the class *and* otherwise satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. §78u-4(a)(3)(B)(iii). The "financial interest" of any given class member is typically calculated in one of four ways: "(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered." *Pirelli Armstrong Tire Corp. v. LaBranche & Co., Inc.*, 2004 WL 1179311, at *7 (S.D.N.Y. May 27, 2004) (quoting *Lax v. First Merchants Acceptance Corp.*, 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)); *The Constance Sczesny Trust*, 223 F.R.D. at 323; *Ferrari*, 2004 WL 1637053, at *4.

In this case, by any of these four measures, the Institutional Investor Group claims to have

the "largest financial interest". The Group has estimated its losses at $17,985,086, based on its representation that its members purchased 2,936,041 gross shares during the class period, or 1,032,489 net shares, at an expense of $23,798,722.12. These figures are certainly larger than those claimed by the Conus Fund Group and Newcomer, which means that the Institutional Investor Group appears to have the "largest financial interest" in the outcome of this litigation. That conclusion follows, however, only if the Court finds that the "group" in question – composed of six seemingly unrelated parties, MN Services, Activest Investmentgesellschaft mbH, Electronic Trading Group L.L.C., Third Millennium Trading, LLP, Horatio Capital LLC, and Donald S. Frank – is a "group of persons", as that term is used in the statute. The Institutional Investor Group simply assumes that they meet this definition.

In so doing, the Group fails to address a concern raised by a number of courts, namely, that the aggregation of large, unrelated "groups" of investors defeats the purpose of choosing a lead plaintiff. As these courts have noted, by allowing unrelated groups to aggregate losses in an effort to generate the "largest financial interest", the possibility emerges that lawyers will form such groups to manipulate the selection process, and in that way gain control of the litigation. *See, e.g., In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (refusing to allow unrelated individuals to aggregate losses, and noting that "[when Congress passed the PSLRA, it] hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff) (citation omitted); *In re Telxon Corp. Sec. Litig.*, 67 F.Supp.2d 803, 816 (N.D. Ohio 1999) (amalgamating a "random assortment of persons" for purposes of the PSLRA lead plaintiff provision is "simply inconsistent with the definition of" the phrase "group of persons"). Indeed it was this very prospect that prompted Congress to pass the PSLRA. *In re*

*Donnkenny Inc. Sec. Litig.*, 171 F.R.D. at 158 ("One of the principal . . . purposes of the PSLRA was to prevent lawyer-driven litigation").

Despite these concerns, there can be no doubt that the PSLRA contemplates that *some* "groups" can serve as lead plaintiff – indeed, the plain language of the statute provides for this outcome. *Mitchell v. Complete Management, Inc.*, 1999 WL 728678, at *3 (S.D.N.Y. Sept. 17, 1999). There is also no doubt that *not all* groups qualify – consider the *reductio ad absurdum* of a "group" consisting of the entire class. Recognizing that the question is one of degree, several courts have adopted a "rule of reason" test, pursuant to which the acceptability of the proposed "group" is tested against its ability to represent the interests of the class, and only allowed to proceed as a group if the court determines that "lawyer-driven" litigation is not likely to result. *See, e.g., Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398 (D. Minn. 1998); *In re Baan Co. Securities Litig.*, 186 F.R.D. 214, 218-35 (D.D.C. 1999) (SEC's position is that a "group of persons" under the PSLRA should be small enough to effectively manage the litigation).

In making this determination, courts have considered several factors, including (i) the size of the class, *Id.*, at 408-409 ("[T]he larger [the size of the group] the greater the dilution of . . . control"); (ii) any evidence that the group was formed in bad faith, *In re Cendant Corp. Litigation*, 264 F.3d 201, 266-268 (3rd Cir. 2001) ("If . . . a court were to determine that the . . . 'group' . . . had been created by . . . lawyers hoping to ensure their . . . appointment as lead counsel . . . it could [reject the group]"; and (iii) the relationship between the parties. *Id.*, at 266-267 (relationship of parties in group should enter calculus). This Court will do likewise.

Preliminarily, the Court is unconcerned with the size of the group, and finds that six members is not too unwieldy a number to effectively manage the litigation. *See, e.g., Funke v.*

*Life Financial Corp.*, 2003 WL 194294, at *5 (S.D.N.Y. Jan. 28, 2003) (finding group of nine individual plaintiffs was "not too large"); *Weltz v. Lee*, 199 F.R.D. 129, 133 (S.D.N.Y. 2001) (finding group of seven investors was small enough to avoid concerns over lawyer dominated litigation). This is not, in other words, a group so large that "the [PSLRA's] express purpose of placing the control of securities class action with a small and finite number of plaintiffs (as opposed to [their] counsel) becomes wholly undermined by" its "sheer size." *Weltz*, 199 F.R.D. at 133; *cf. In re Advanced Tissue Sci. Sec. Litig.*, 184 F.R.D. 346, 352 (S.D.Cal. 1998) (refusing to appoint a group consisting of "over 250 unrelated investors" because of the court's determination that doing so would be "inconsistent with the goal of restoring control over lawsuits to plaintiffs instead of counsel"); *Chill*, 181 F.R.D. at 408 (declining to confer presumptive lead plaintiff status upon a "group" with almost 300 members because doing so "would threaten the interests of the class, would subvert the intent of Congress, and would be too unwieldy to allow for the just, speedy and inexpensive determination of this action").

Neither is there any evidence that the Institutional Investor Group was formed in bad faith. Indeed, even were the Court to deconstruct the Group, two of its individual members would still have the "largest financial interest" pursuant to 15 U.S.C. §78u-4(a)(3)(B)(iii). For instance, when compared against the entire Conus Fund Group, the Electronic Trading Group, L.L.C would be the presumptively most adequate plaintiff under the measure of the number of net shares purchased during the class period, the total net funds expended during the class period, or the approximate losses suffered. Alternatively, Third Millennium Trading, LLP, would be the presumptively most adequate plaintiff if gross share purchases were used as the metric. This is simply not a case where a group of unrelated investors has been cobbled together as a "group" to

displace a single competing institutional investor, or a smaller, closely-related group of investors. If it were, the Court would be reluctant to recognize the group under the statute.

Of course, the Institutional Investor Group must also satisfy the requirements articulated in Rule 23 before qualifying as lead plaintiff under the PSLRA. Rule 23 sets forth four prerequisites – universally referred to as numerosity, commonality, typicality and adequacy – to be considered in evaluating the propriety of class certification, although only the typicality and adequacy criteria are relevant to the selection of lead plaintiff. *The Constance Sczesny Trust*, 223 F.R.D. at 323-24. The Institutional Investor Group's easily meets the typicality requirement in this case because its "claim arises from the same course of events and "each class member makes similar legal arguments to prove the defendants' liability" even if there are minor variations in the factual allegations. *Id.* at 324 (internal citations and quotations omitted). The Institutional Investor Group, like the other purported class members in the action, has asserted that it purchased Elan securities during the class period and was injured by false and misleading representations made by defendants in violation of the 1934 Act.

Similarly, the Court is convinced that the Institutional Investor Group "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). In evaluating adequacy, courts have assessed factors such as: (1) the size, available resources and experience of the proposed lead plaintiff, *Pirelli Armstrong Tire Corp.*, 2004 WL 1179311, at *20 (citing cases); (2) the qualifications of the proposed class counsel, *The Constance Sczensy Trust*, 233 F.R.D. at 324 (citing *In re Deutsche Telekom Ag Securities Litigation*, 229 F. Supp. 2d 277, 282 (S.D.N.Y. 2002)); and (3) any potential conflicts or antagonisms rising among purported class members. *In re Deutsche Telekom Ag Securities Litigation*, 229 F.Supp. 2d at 282 (citations omitted). Having

10

considered these factors, the Court finds that the Group will fairly and adequately protect the interests of the class.

The Court is aware that disagreements may arise throughout this action, and as such, reserves the right to modify this lead plaintiff structure in the event that litigation is stalled, expenses become unnecessarily duplicative or wasteful, or the structure becomes otherwise unmanageable. In the meantime, the action shall proceed with the Institutional Investor Group as sole lead plaintiff.

### III. Appointment of Lead Counsel

The Institutional Investor Group has further moved to appoint Milberg Weiss and Entwistle and Cappucci LLP as co-lead counsel.

The PSLRA provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel." 15 U.S.C. §78u-4(a)(3)(B)(v). The resumes submitted by the Institutional Investor Group indicate that Milberg Weiss and Entwistle and Cappucci LLP have served as lead counsel in several securities fraud class actions, and are otherwise well qualified. Accordingly, the Court appoints Milberg Weiss and Entwistle & Cappucci LLP as co-lead counsel, provided that there is no duplication of attorneys' services, and the use of co-lead counsel does not in any way increase attorneys' fees and expenses. *In re Donnkenny Inc. Securities Litigation*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997).

## IV. Order to Show Cause Why This Case Should Not Be Transferred

As noted at the outset, a closely-related securities class action is currently pending in the District of Massachusetts, captioned as *Williams v Elan Corp., PLC et al.*, 05-cv-10413 (JLT) (D. Mass. Mar. 4, 2005). Indeed, the *Williams* case was the first-filed of these securities actions, and was therefore also the trigger for the PSLRA's various filing requirements. 15 U.S.C. §78u-4(a)(3)(A)(i). By order dated June 6, 2005, the *Williams* court consolidated related actions pending in that district, appointed the Institutional Investor Group as lead plaintiff, and selected Milberg Weiss and Entwistle & Cappucci LLP as co-lead counsel. (*See* June 6, 2005 Order, attached as Ex. A to June 13, 2005 letter from Milberg Weiss to the Court). Having reached the same conclusion in this case, the Court preliminarily concludes that the SDNY Actions – now consolidated as *In re Elan Corp. Securities Litigation* – should be transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

Section 1404(a) of Title 28 provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). Transfer is particularly appropriate where, as in this case, two cases involving the same issues are simultaneously pending in different district courts. *See Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (U.S. 1960) ("To permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that [Section] 1404(a) was designed to prevent.").

Although a transfer pursuant to § 1404(a) is typically premised on the motion of a party, the statute is broad enough that a court can transfer a case on its own initiative. *Lead Industries*

12

*Ass'n, Inc. v. Occupational Safety and Health Admin.*, 610 F.2d 70, 79 n. 17 (2d Cir.1979) ("the broad language of 28 U.S.C. § 1404(a) would seem to permit a court to order transfer sua sponte"); *Cento Pearl v. Arts and Craft Supply Inc.*, 2003 WL 1960595, at *1 (S.D.N.Y. 2003) (collecting cases). Before *sua sponte* transferring a case, however, the transferring court should – and will in this case – allow the parties to present their views. *Mobil Corp. v. SEC*, 550 F.Supp 67, 69 (S.D.N.Y. 1982).

For this reason, the Court orders the parties to show cause why the action now captioned as *In re Elan Corp. Securities Litigation* should not be transferred to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a) for consolidation with *Williams v Elan Corp., PLC et al.*, 05-cv-10413 (JLT) (D. Mass. Mar. 4, 2005). In connection with this order, the parties are directed to simultaneously file supplemental memoranda on the issue by September 15, 2005.

## V.    Conclusion

For the foregoing reasons, the Court consolidates the SDNY Actions, appoints the Institutional Investor Group as lead plaintiff, and designates Milberg Weiss and Entwistle and Cappucci LLP as co-lead counsel. The Court also directs the parties to show cause why this consolidated action should not be transferred to the District of Massachusetts.

SO ORDERED.

Dated: New York, New York
       August 4, 2005

                                                  Richard J. Holwell
                                                  United States District Judge